UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSE SACKIN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>TRANSPERFECT GLOBAL, INC.,<br><br>    Defendant. | Case No. 17-cv-1469<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jesse Sackin ("Plaintiff"), individually and on behalf of other similarly situated individuals, by and through his undersigned attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, file this Class Action Complaint against TransPerfect Global, Inc. ("TransPerfect" or "Defendant") and allege the following based on personal knowledge, the investigation of counsel, and information and belief.

## NATURE OF THE ACTION

1.  Plaintiff and other Class Members are current and former employees ("Employees") of Defendant who entrusted their personally identifiable information ("PII") to TransPerfect. Defendant betrayed Plaintiff's trust by failing to properly safeguard and protect his PII and by disclosing his PII to cybercriminals.

2.  This class action seeks to redress TransPerfect's unlawful and negligent disclosure of thousands of Employees' PII in a massive data breach on January 17, 2016 ("Data Breach" or "Breach"), in violation of common law.

3.  The Data Breach occurred when some TransPerfect employees received emails from cyber-criminals which requested 2015 W-2 form tax information and payroll information

for the period ending January 13, 2017. At least one TransPerfect employee responded to the email and provided the requested information. The disclosed information included names, direct deposit bank account numbers, routing numbers, and Social Security numbers for current and past employees.

4. For the rest of their lives, Plaintiff and the Class Members will bear an immediate and heightened risk of all manners of identity theft. Accordingly, Plaintiff brings this action as a direct and/or proximate result of the Data Breach. Plaintiff has incurred, and will continue to incur damages in the form of, *inter alia*, loss of privacy and/or the additional damages set forth in detail below.

## JURISDICTION AND VENUE

5. Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members, at least one Class Member is a citizen of a state that is diverse from TransPerfect, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

6. This Court has personal jurisdiction over TransPerfect Global, Inc. because TransPerfect maintains its principal place of business in this District, is registered to conduct business in New York, and has sufficient minimum contacts with New York.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because TransPerfect resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

8. Plaintiff Jesse Sackin is a resident of Maplewood, New Jersey and a former employee of TransPerfect. Mr. Sackin was employed by TransPerfect during 2015 and received a Form W-2 from TransPerfect for 2015. Mr. Sackin provided confidential information to

TransPerfect including his name, date of birth, and Social Security number in connection with his employment.  TransPerfect informed Mr. Sackin via e-mail that TransPerfect had disclosed his Form W-2 data in the Data Breach on January 22, 2017.  Mr. Sackin reasonably expected that TransPerfect would maintain the privacy of his confidential PII.  Mr. Sackin has since purchased identity theft protection and monitoring from LifeLock.  Mr. Sackin sought protection from LifeLock because LifeLock offered greater protection than the inadequate monitoring offered by TransPerfect.

9. Defendant TransPerfect Global, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business in New York, New York.  TransPerfect employs over 4,000 individuals.[1]

## FACTUAL BACKGROUND

**I.   TransPerfect's Data Breach**

10. On or about January 17, 2017, a TransPerfect employee responded to an Internet "phishing"[2] scam by forwarding to unknown cybercriminals the 2015 Forms W-2 data for all of TransPerfect's current and former employees.  The Form W-2 data contained sensitive PII, including names, addresses, salaries, and, most importantly, Social Security numbers.

11. The cybercriminals obtained the Employees' information through a typical "phishing" scam.  TransPerfect has admitted that the cybercriminals sent bogus emails to

---

[1] *What We Do*, TRANSPERFECT (February 23, 2012), http://www.transperfect.com/.

[2] "Phishing" is an attempt to acquire PII by masquerading as a trustworthy entity through an electronic communication.  *See* http://www.onguardonline.gov/articles/0003-phishing.  Phishing is typically carried out by criminals that send counterfeit e-mails that appear to be from legitimate and familiar sources.  As in this case, phising emails often direct recipients to provide PII.  When criminals have access to PII from a large group of similarly situated victims, it is much more feasible to develop a believable phishing spoof email to victimize members of that group.

TransPerfect employees asked for copies of all of its 2015 Forms W-2 data.[3] Due to the lack of training, procedures, and controls in place at TransPerfect, at least one employee complied with the cybercriminals' request and forwarded copies of all of the Employees' form W-2 data to the cybercriminals.

12.     Additionally, the cybercriminals also requested payroll information for the period that ended on January 13, 2017.  The TransPerfect employee forwarded that payroll information of current TransPerfect employees that contained sensitive PII, including names, bank account numbers, routing numbers, and Social Security numbers.

13.     Current and past employees were first notified of the breach starting on January 20, 2017.  In a memorandum to current and past employees, Defendant stated that it was currently investigating the matter.  Defendant also provided information regarding action that should be taken by affected Employees.

14.     By disclosing its Employees' PII to cybercriminals, TransPerfect put all of its Employees at risk.

15.     TransPerfect negligently failed to take the necessary precautions required to safeguard and protect Plaintiff's and the other Class Members' PII from unauthorized disclosure.  Defendant's actions represent a flagrant disregard of Plaintiff's and the other Class Members' rights, both as to privacy and property.

**II.     Personally Identifiable Information (PII)**

16.     PII is of great value to hackers and cyber criminals, and the data compromised in the Data Breach can be used in a variety of unlawful manners.

---

[3] Jeff Mordock, *TransPerfect Workers Victimized In Data Breach*, AZ CENTRAL (Jan. 27, 2017), http://www.azcentral.com/story/money/2017/01/27/transperfect-workers-victimized-data-breach/97129850/.

17. PII is information that can be used to distinguish, identify, or trace an individual's identity, such as their name, Social Security number, and biometric records. This can be accomplished alone, or in combination with other personal or identifying information that is connected, or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.[4]

18. Given the nature of this breach, it is foreseeable that the compromised PII can be used by hackers and cyber-criminals in a variety of different ways.

19. Indeed, the cybercriminals who possess Employees' PII can easily obtain Employees' tax returns.

**III.  TransPerfect's Was Aware Of The Risk Of Cyber-Attacks.**

20. Data security breaches -- and data security breach litigation -- dominated the headlines in 2015 and 2016 and continue to do so in 2017.[5]

21. According to the Privacy Rights Clearinghouse Chronology of Data Breaches, 282 breaches were publicly reported from the fourth quarter of 2014 through the fourth quarter of 2015.[6]

22. In fact, in 2016 Internet security researcher Brian Krebs warned of this precise scam on his website. He warned that scammers specializing in tax refund fraud were trying to scam various companies by sending false emails, purportedly from the company's chief

---

[4] *See* OFFICE OF MGMT. & BUDGET, OMB MEMORANDUM M-07-16 n. 1.

[5] *See e.g.*, *Seagate Phish Exposes All Employee W-2*, KREBSONSECURITY.COM (March 6, 2016), https://krebsonsecurity.com/2016/03/seagate-phish-exposes-all-employee-w-2s/; Seth Fiegerman, *Yahoo Says 500 Million Accounts Stolen*, CNN Tech (Sept. 23, 2016 10:39 AM), http://money.cnn.com/2016/09/22/technology/yahoo-data-breach/.

[6] *See* Privacy Rights Clearinghouse Chronology of Breaches *available at* http://www.privacyrights.org.

executive officer, to individuals in the human resources and accounting departments and asking for copies of Form W-2 information.[7]

23. TransPerfect's negligence in safeguarding the Employees' PII is exacerbated by the fact that the company's own website recognizes the importance cyber security and potential threats from hackers. For example, in connection with Defendant's service offerings to law firms, its website states:

> The recently reported cyberattacks on law firms . . . have put the issue of . . . cybersecurity in the spotlight. But the truth is that such attacks are neither new nor infrequent. Cyberattacks against law firms have been on the rise for a number of years—unsurprising given the wealth of highly sensitive and valuable client information that law firms possess. It is a misconception that these attacks are randomly carried out by bored, tech-savvy teenagers looking for a buzz. They are often conducted by sophisticated, well-funded hackers looking for specific information about pending deals or disputes. Earlier this year, the FBI's Cyber Division . . . warned that cybercriminals are actively targeting the legal sector to obtain nonpublic information about corporations in order to turn potentially significant profits on stock markets trades.[8]

24. Further, Defendant also highlights the specific vulnerabilities associated with email:

> Email is the most popular form of communication (along with texting) in the world. But it is also one of the most vulnerable to hacking, which can take the form of viruses, malware, trojans, keyloggers, man-in-the-middle, and man-in-the-browser attacks (not to mention potential breaches of devices, networks, and servers themselves). Even Yahoo's own Safety Center advises, "Never send your credit card number, Social Security number,

---

[7] *Phishers Spoof CEO, Request W2 Forms*, KREBSONSECURITY.COM (Feb. 24, 2016), http://bit.ly/25oAc2c.

[8] Tankut Eker, Dan Meyers, and Al-Karim Makhani, *Cybersecurity and Arbitration: Protecting Your Documents and Ensuring Confidentially*, TRANSPERFECT (Jan. 17, 2017), http://www.transperfect.com/blog/cybersecurity-and-arbitration.

>  bank account number, driver's license number or similar details in an email, which is generally not secure. Think of email as a paper postcard—people can see what's written on it if they try hard enough."[9]

25. However, Defendant did exactly what it warned against. TransPerfect sent Social Security numbers and bank account numbers through email.

26. The cybercriminals who obtained the Employees' PII may also exploit the PII they obtained by selling the data in the so-called "dark markets." Having obtained the Employees' names, addresses, and Social Security numbers, cybercriminals can pair the data with other available information to commit a broad range of fraud in an Employee's name, including but not limited to:

- obtaining employment;
- obtaining a loan;
- applying for credit cards or spending money;
- filing false tax returns;
- obtaining medical care;
- stealing Social Security and other government benefits; and
- applying for a driver's license, birth certificate, or other public document.

27. In addition, if an employee's Social Security number is used to create a false identification for someone who commits a crime, the Employee may become entangled in the criminal justice system, impairing the employee's ability to gain employment or obtain a loan.

## IV. TransPerfect's Current And Former Employees Have Suffered Concrete Injury.

28. Employees were obligated to provide TransPerfect with sensitive personal information, including their Social Security numbers.

---

[9] *Id.*

29. The cybercriminals will certainly use the Employees' PII, and the Employees are now, and for the rest of their lives will be, at a heightened risk of identity theft. Plaintiff brings this action because as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff has incurred (and will continue to incur) damages in the form of, *inter alia*, loss of privacy and costs of engaging credit monitoring and protection services. By this action, Plaintiff seeks to hold TransPerfect responsible for the harm caused by its negligence.

30. In addition, as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and the other Class Members have been deprived of the value of their PII, for which there is a well-established national and international market. For example, stolen PII is sold on the cyber black market for $14 to $25 per record to individuals focused on committing fraud or needing or wanting a new identity.

31. Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the other Class Members at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.[10] Indeed, "[t]he level of risk is growing for anyone whose information is stolen in a data breach."[11] Javelin Strategy & Research, a leading provider of quantitative and qualitative research, notes that "[t]he theft of SSNs places consumers at a substantial risk of fraud."[12] Moreover, there is a high likelihood that significant

---

[10] *Data Breach Victims More Likely To Suffer Identity Fraud*, INSURANCE INFORMATION INSTITUTE BLOG (February 23, 2012), http://www.iii.org/insuranceindustryblog/?p=267.

[11] Susan Ladika, *Study: Data Breaches Pose A Greater Risk*, CREDITCARDS.COM (July 23, 2014), http://www.creditcards.com/credit-card-news/data-breach-id-theft-risk-increase-study-1282.php.

[12] THE CONSUMER DATA INSECURITY REPORT: EXAMINING THE DATA BREACH- IDENTITY FRAUD PARADIGM IN FOUR MAJOR METROPOLITAN AREAS, (*available at* http://www.nclnet.org/datainsecurity_report).

identity fraud and/or identity theft has not yet been discovered or reported. There is also a high probability that criminals who now possess Plaintiff's and the other Class Members' PII have not yet used the information, but will do so at a later date or re-sell it.

32. As a result of the Data Breach, Plaintiff and Employees have already suffered damages. To mitigate those damages, Plaintiff incurred the additional injury of purchasing additional credit monitoring through LifeLock to ensure the protection of his PII, as LifeLock offers superior protections not available through ProtectMyID Elite.

### V. TransPerfect's Response To The Data Breach Is Inadequate To Protect The Employees

33. TransPerfect has failed to provide adequate compensation to the Employees harmed by its negligence. To date, TransPerfect has offered Employees just two years of identity theft protection through the Experian ProtectMyID Elite service. Even if an employee accepts the ProtectMyID Elite service, it will not provide Employees any compensation for the costs and burdens associated with fraudulent activity resulting from the Data Breach that took place prior to an employee signing up for ProtectMyID Elite. TransPerfect has not offered Employees any assistance in dealing with the IRS or state tax agencies. Nor has TransPerfect offered to reimburse Employees for any costs incurred as a result of falsely filed tax returns, a likely consequence of the Breach.

34. The offered ProtectMyID Elite service is inadequate to protect the Employees from the threats they face. It does nothing to protect *against* identity theft. Instead, it only provides various measures to identify identity theft once it has already been committed. For example, ProtectMyID Elite monitors Employees' credit reports, performs internet scans, and provides address change alerts. Notably, fraudulent activity, such as the filing of a false tax return, may not appear on a credit report. Additionally, ProtectMyID *does not* provide real time

monitoring of Employees' credit cards and bank account statements. Rather, the included protections note that the ProtectMyID membership will only "help replac[e] credit, debit, and medical insurance cards." Although ProtectMyID Elite offers up to $1 million of identity theft insurance, the coverage afforded is limited and often duplicative of (or inferior to) basic protections provided by banks and credit card companies.

35. Many websites that rank identity protection services are critical of ProtectMyID. NextAdvisor ranks ProtectMyID at the bottom of comparable services, noting that it "lacks in protection; only includes Experian credit report monitoring; credit score and other credit reports cost extra."[13] BestIDtheftCompanys.com ranks ProtectMyID at No. 17 with a score of just 5.2 out of 10 (and a "User Score" of just 1.2).[14]

## CLASS ACTION ALLEGATIONS

36. Pursuant to FED. R. CIV. P. 23, Plaintiff brings this action against TransPerfect as a class action on behalf of himself and all members of the following class of similarly situated persons (the "Class"):

> "All persons whose PII was compromised as a result of the Data Breach."

37. Plaintiff reserves the right to amend the above definition(s), or to propose other or additional classes, in subsequent pleadings and/or motions for class certification.

38. Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant have or had a controlling interest, or which Defendant

---

[13] IDENTITY THEFT PROTECTION REVIEWS & PRICES, NextAdvisor.com. http://bit.ly/1UCnsRP (last visited Feb. 27, 2017).

[14] EXPERIAN PROTECTMYID, bestidtesftcompanys.com. http://bit.ly/1Rh1YGy (last visited Feb. 27, 2017).

otherwise controls or controlled; and any legal representative, predecessor, successor, or assignee of Defendant.

39. This action satisfies the requirements for a class action under Rule 23.

40. Plaintiff believes that the proposed Class as described above consists of thousands of members and can be identified through TransPerfect's records, though the exact number and identities of the Class Members are currently unknown. The Class is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.

41. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class Members. Common questions include, but are not limited to, the following:

   a. Whether and to what extent TransPerfect had a duty to protect the Class Members' PII;

   b. Whether TransPerfect breached its duty to protect the Class Members' PII;

   c. Whether TransPerfect disclosed Class Members' PII;

   d. Whether TransPerfect timely, accurately, and adequately informed Class Members that their PII had been compromised;

   e. Whether TransPerfect's conduct was negligent; and

   f. Whether Plaintiff and Class Members are entitled to damages.

42. The claims asserted by Plaintiff are typical of the claims of the members of the Class they seek to represent because, among other things, Plaintiff and Class Members sustained similar injuries as a result of TransPerfect's uniform wrongful conduct; TransPerfect owed the same duty to each class member; and Class Members' legal claims arise from the same conduct by TransPerfect.

43. Plaintiff will fairly and adequately protect the interests of the proposed Class. Plaintiff's interests do not conflict with the Class Members' interests. Plaintiff has retained class counsel experienced in class action litigation to prosecute this case on behalf of the Class.

44. Prosecuting separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendant.

45. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class Members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class Members to prosecute their claims individually. Trial of Plaintiff's and the Class Members' claims is manageable. Unless the Class is certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

46. Certification of the Class, therefore, is appropriate under FED. R. CIV. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

47. Certification of the Class is also appropriate under FED. R. CIV. P. 23(b)(2) because TransPerfect has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or equitable relief with respect to the Class as a whole.

48. Certification of the Class is also appropriate under FED. R. CIV. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of establishing incompatible standards of conduct for TransPerfect.

49. TransPerfect's wrongful actions, inaction, and omissions are generally applicable to the Class as a whole and, therefore, Plaintiff also seeks equitable remedies for the Class.

50. TransPerfect's systemic policies and practices also make injunctive relief for the Class appropriate.

51. Absent a class action, TransPerfect will retain the benefits of its wrongdoing despite its serious violations of the law and infliction of economic damages, injury, and harm on Plaintiff and Class Members.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
**(Negligence)**

52. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

53. Plaintiff brings this claim on behalf of himself and the Class.

54. The Employees are or were employed by TransPerfect and were issued a 2015 Form W-2 from TransPerfect. As a condition of their employment, Employees were obligated to provide TransPerfect with certain PII including their names, addresses, and Social Security numbers.

55. TransPerfect had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed. TransPerfect had a duty to Plaintiff and each class member to exercise reasonable care in holding, safeguarding, and protecting that information. Plaintiff and the Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the other Class Members had no ability to protect their data that was in TransPerfect's possession.

56. TransPerfect had a duty to Plaintiff and Class Members to safeguard and protect their PII. TransPerfect's duty to the Plaintiff and other Class Members included, *inter alia*, establishing processes and procedures to protect the PII from wrongful disclosure and training employees who had access to the PII as to those processes and procedures.

57. Defendant assumed a duty of care to use reasonable means to secure and safeguard this PII, to prevent its disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems.

58. Defendant had a duty to use ordinary care in activities from which harm might be reasonably anticipated in connection with Employees' PII data.

59. Defendant breached its duty of care by failing to secure and safeguard the PII of Plaintiff and Class Members. Defendant negligently stored and/or maintained its systems.

60. Further, Defendant, by and through its above negligent actions and/or inaction, further breached its duties to Plaintiff and Class Members by failing to design, adopt, implement, control, manage, monitor, and audit its processes, controls, policies, procedures, and protocols for complying with the applicable laws and safeguarding and protecting Plaintiff's and Class Members' PII within its possession, custody, and control.

61. TransPerfect admitted that Plaintiff's and the other Class Members' PII was wrongfully disclosed as a result of the Data Breach.

62. Plaintiff and the other Class Members have suffered harm as a result of Defendant's negligence. These victims' loss of control over the compromised PII subjects each of them to a greatly enhanced risk of identity theft, fraud, and myriad other types of fraud and theft stemming from use of the compromised information.

63. It was reasonably foreseeable -- in that Defendant knew or should have known -- that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII would result in its release and disclosure to unauthorized third parties who, in turn, wrongfully used such PII or disseminated it to other fraudsters for their wrongful use and for no lawful purpose.

64. But for Defendant's negligent and wrongful breach of its responsibilities and duties owed to Plaintiff and Class Members, their PII would not have been compromised.

65. As a direct and proximate result of Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' PII, Plaintiff and the Class Members have incurred (and will continue to incur) the above-referenced economic damages, and other actual injury and harm -- for which they are entitled to compensation. Defendant's wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence and/or negligent misrepresentation.

66. Plaintiff and Class Members are entitled to injunctive relief as well as actual and punitive damages.

## SECOND CAUSE OF ACTION
### (Breach of Implied Contract)

67. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

68. Plaintiff brings this claim on behalf of himself and the Class.

69. Employees provided their PII in connection with their employment with TransPerfect in order to verify their identity and receive compensation and in order for TransPerfect to have complete employee records for tax purposes, amongst other things.

70. Plaintiff and the Class provided various forms of PII to TransPerfect as a condition precedent to their employment with TransPerfect, or in connection with employer-sponsored benefits.

71. Understanding the sensitive nature of PII, TransPerfect implicitly promised Plaintiff and the Class Members that it would take adequate measures to protect their PII.

72. Indeed, a material term of this contract is a covenant by TransPerfect that it will take reasonable efforts to safeguard Employees' PII.

73. TransPerfect's Employees, including Plaintiff and the Class Members, relied upon this covenant and would not have disclosed their PII without assurances that it would be properly safeguarded. Moreover, the covenant to adequately safeguard Plaintiff and the Class Members' PII is an implied term, to the extent it is not an express term.

74. Plaintiff and the Class Members fulfilled their obligations under the contract by providing their PII to TransPerfect.

75. TransPerfect, however, failed to safeguard and protect Plaintiff and the Class Members' PII. TransPerfect's breach of its obligations under the contract between the parties directly caused Plaintiff and the Class Members to suffer injuries.

91. As the direct and proximate result of Defendant's breach of the contract between TransPerfect and Plaintiff and the Class Members, Plaintiff and the Class Members sustained actual losses and damages as described above.

92. Accordingly, Plaintiff, on behalf of himself and the Class Members, respectfully requests this Court award all relevant damages for TransPerfect's breach of contract.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that the Court grant relief against Defendant as follows:

      A.     For an Order certifying the proposed Class pursuant to FED. R. CIV. P. 23(b)(1), (2) and/or (3), requiring notice thereto to be paid by Defendant, and appointing Plaintiff and his counsel to represent the Class;

      B.     For appropriate injunctive relief and/or declaratory relief, including an Order requiring Defendant to immediately secure and fully encrypt all confidential information, to properly secure computers containing confidential information, to cease negligently storing, handling, and securing its Employees' confidential information, and to provide identity theft monitoring for an additional five years;

      C.     Adjudging and decreeing that Defendant has engaged in the conduct alleged herein;

      D.     For compensatory and general damages according to proof on certain causes of action;

      E.     For reimbursement, restitution, and disgorgement on certain causes of action;

      F.     For both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;

      G.     For costs of the proceedings herein;

      H.     For an Order awarding Plaintiff and the Class reasonable attorney's fees and expenses for the costs of this suit; and

      I.     For any and all such other and further relief that this Court may deem just and proper, including but not limited to punitive or exemplary damages.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury of all claims and causes of action in this lawsuit to which he is so entitled.

Dated: February 27, 2017
White Plains, New York

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By: */s/ Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson
Todd S. Garber
John D. Sardesai-Grant
Difie M. Osborne
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
jfrei-pearson@fbfglaw.com
tgarber@fbfglaw.com
jsardesaigrant@fbfglaw.com
dosborne@fbfglaw.com

*Attorneys for Plaintiff and the Putative Class*