| | |
|---|---|
| JESSE SACKIN, PETER HARRIS, STEPHEN LUSTIGSON, NICHOLAS MIUCCIO, and SARAH HENDERSON, individually and on behalf of all others similarly situated, | Case No. 17-cv-1469-LGS |
| Plaintiffs, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| TRANSPERFECT GLOBAL, INC., | |
| Defendant. | |

Plaintiffs Jesse Sackin, Peter Harris, Stephen Lustigson, Nicholas Miuccio, and Sarah Henderson (collectively, "Plaintiffs"), individually and on behalf of other similarly situated individuals, by and through their undersigned attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, file this Amended Class Action Complaint against TransPerfect Global, Inc. ("TransPerfect" or "Defendant") and allege the following based on personal knowledge, the investigation of counsel, and information and belief.

## NATURE OF THE ACTION

1.      Plaintiffs and other Class Members are current and former employees ("Employees") of Defendant who entrusted their personally identifiable information ("PII") to TransPerfect.  Defendant betrayed Plaintiffs' trust by failing to properly safeguard and protect their PII and by disclosing their PII to cybercriminals.

2.      This class action seeks to redress TransPerfect's unlawful and negligent disclosure of thousands of Employees' PII in a massive data breach on January 17, 2016 ("Data Breach" or "Breach"), in violation of common law and N.Y. LABOR LAW § 203-d.

3.      The Data Breach occurred when some TransPerfect Employees received e-mails from cyber-criminals which requested 2015 W-2 form tax information and payroll information for the period ending January 13, 2017.  At least one TransPerfect Employee responded to the e-mail and provided the requested information.  The disclosed information included Employees' names, direct deposit bank account numbers, routing numbers, and Social Security numbers.

4.      For the rest of their lives, Plaintiffs and the Class Members will bear an immediate and heightened risk of all manners of identity theft.  Accordingly, Plaintiffs bring this action as a direct and/or proximate result of the Data Breach.  Plaintiffs have incurred, and will continue to incur damages in the form of, *inter alia*, attempted identity theft, time and expenses mitigating harms, increased risk of harm, diminished value of PII, loss of privacy, and/or the additional damages set forth in detail below.

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members, a majority of Class Members are citizens of states that are diverse from TransPerfect, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

6.      This Court has personal jurisdiction over TransPerfect Global, Inc. because TransPerfect maintains its principal place of business in this District, is registered to conduct business in New York, and has sufficient minimum contacts with New York.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because TransPerfect resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

**PARTIES**

8.      Plaintiff Jesse Sackin is a resident of Maplewood, New Jersey and a former employee of TransPerfect.  Mr. Sackin worked in TransPerfect's office located at 3 Park Avenue, New York, New York.  Mr. Sackin was employed by TransPerfect during 2015 and received a Form W-2 from TransPerfect for 2015.  Mr. Sackin provided confidential information to TransPerfect including his name, date of birth, banking information, and Social Security number in connection with his employment.  TransPerfect informed Mr. Sackin via e-mail that TransPerfect had disclosed his Form W-2 data in the Data Breach on January 22, 2017.  Mr. Sackin reasonably expected that TransPerfect would maintain the privacy of his confidential PII.  Mr. Sackin has since purchased identity theft protection and monitoring from LifeLock.  Mr. Sackin sought protection from LifeLock because LifeLock offered greater protection than the inadequate monitoring offered by TransPerfect.

9.      Plaintiff Peter Harris is a resident of New Haven, Connecticut and a former employee of TransPerfect.  Mr. Harris worked in TransPerfect's office located at 3 Park Avenue, New York, New York.  Mr. Harris was employed by TransPerfect from approximately 2011 through 2013.  Mr. Harris received Form W-2's for the years he was employed by TransPerfect and, for reasons unknown to Mr. Harris, continued receiving Form W-2's after his employment concluded, including in the year 2015.  Mr. Harris provided confidential information to TransPerfect including his name, date of birth, banking information, and Social Security number in connection with his employment.  TransPerfect informed Mr. Harris via e-mail that TransPerfect had disclosed his Form W-2 data in the Data Breach on or around January 22, 2017.  Mr. Harris reasonably expected that TransPerfect would maintain the privacy of his confidential PII and would destroy his PII upon his leaving TransPerfect.  Mr. Harris has since purchased identity theft protection and monitoring from LifeLock.  Mr. Harris sought protection from

LifeLock because LifeLock offered greater protection than the inadequate monitoring offered by TransPerfect.

10. Plaintiff Stephen Lustigson is a resident of San Francisco, California and a former employee of TransPerfect. Mr. Lustigson worked in TransPerfect's office located at San Diego, California. Mr. Lustigson was employed by TransPerfect from 2011 through 2012. Mr. Lustigson received Form W-2's for the years he was employed by TransPerfect and, for reasons unknown to Mr. Lustigson, continued receiving Form W-2's after his employment concluded, including in the year 2015. Mr. Lustigson provided confidential information to TransPerfect including his name, date of birth, banking information, and Social Security number in connection with his employment. TransPerfect informed Mr. Lustigson via e-mail that TransPerfect had disclosed his Form W-2 data in the Data Breach on or around January 20, 2017. Mr. Lustigson reasonably expected that TransPerfect would maintain the privacy of his confidential PII and would destroy his PII upon his leaving TransPerfect. Mr. Lustigson has since purchased identity theft protection and monitoring from LifeLock. Mr. Lustigson sought protection from LifeLock because LifeLock offered greater protection than the inadequate monitoring offered by TransPerfect.

11. Plaintiff Nicholas Miuccio is a resident of Hoboken, New Jersey and a former employee of TransPerfect. Mr. Miuccio worked in TransPerfect's office located in Philadelphia, Pennsylvania. Mr. Miuccio was employed by TransPerfect from 2013 through 2014. Mr. Miuccio received Form W-2's for the years he was employed by TransPerfect and, for reasons unknown to Mr. Miuccio, continued receiving Form W-2's after his employment concluded, including in the year 2015. Mr. Miuccio provided confidential information to TransPerfect including his name, date of birth, banking information, and Social Security number in connection

with his employment.  TransPerfect informed Mr. Miuccio via e-mail that TransPerfect had disclosed his Form W-2 data in the Data Breach on or around January 23, 2017.  Mr. Miuccio reasonably expected that TransPerfect would maintain the privacy of his confidential PII.  Mr. Miuccio has since purchased identity theft protection and monitoring from LifeLock.  Mr. Miuccio sought protection from LifeLock because LifeLock offered greater protection than the inadequate monitoring offered by TransPerfect.

12.     Plaintiff Sarah Henderson is a resident of New York, New York and a former employee of TransPerfect.  Ms. Henderson worked in TransPerfect's office located at 3 Park Avenue, New York, New York.  Ms. Henderson was employed by TransPerfect from September through December 2011.  Ms. Henderson received Form W-2's for the years she was employed by TransPerfect and, unbeknownst to Ms. Henderson, TransPerfect continued generating Form W-2's for her after her employment concluded, including in the year 2015.  Ms. Henderson provided confidential information to TransPerfect including her name, date of birth, banking information, and Social Security number in connection with his employment.  TransPerfect informed Ms. Henderson via e-mail that TransPerfect had disclosed his Form W-2 data in the Data Breach on or around January 20, 2017.  Ms. Henderson reasonably expected that TransPerfect would maintain the privacy of her confidential PII and would destroy her PII upon her leaving TransPerfect.  Ms. Henderson has since purchased identity theft protection and monitoring from LifeLock.  Ms. Henderson sought protection from LifeLock because LifeLock offered greater protection than the inadequate monitoring offered by TransPerfect.

13.     Defendant TransPerfect Global, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business in New York, New York.  TransPerfect employs over 4,000 individuals.[1]

## FACTUAL BACKGROUND

### I.     TransPerfect's Data Breach

14.     On or about January 17, 2017, a TransPerfect employee responded to an Internet "phishing"[2] scam by forwarding to unknown cybercriminals the 2015 Forms W-2 data for all of TransPerfect's current and former Employees.  The Form W-2 data contained sensitive PII, including names, addresses, wages, dependent care benefits, federal and local income tax information, and, most importantly, Social Security numbers.

15.     The cybercriminals obtained the Employees' information through a typical "phishing" scam.  TransPerfect has admitted that the cybercriminals sent falsified e-mails to TransPerfect employees asked for copies of all of its 2015 Forms W-2 data.[3]  Due to the lack of training, procedures, and controls in place at TransPerfect, at least one employee complied with the cybercriminals' request and forwarded copies of all of the Employees' Form W-2 data to the cybercriminals.

---

[1] *Who We Are*, TRANSPERFECT http://www.transperfect.com/about/_about_us.html (last visited May 11, 2017).

[2] "Phishing" is an attempt to acquire PII by masquerading as a trustworthy entity through an electronic communication.  *See* FED. TRADE COMM'N, CONSUMER INFORMATION: PHISHING (2011), http://www.onguardonline.gov/articles/0003-phishing.  Phishing is typically carried out by criminals that send counterfeit e-mails that appear to be from legitimate and familiar sources.  As in this case, phising e-mails often direct recipients to provide PII.  When criminals have access to PII from a large group of similarly situated victims, it is much more feasible to develop a believable phishing spoof e-mail to victimize members of that group.

[3] Jeff Mordock, *TransPerfect Workers Victimized In Data Breach*, AZ CENTRAL (Jan. 27, 2017), http://www.azcentral.com/story/money/2017/01/27/transperfect-workers-victimized-data-breach/97129850/.

16.     Additionally, the cybercriminals also requested payroll information for the period that ended on January 13, 2017.  The TransPerfect employee forwarded that payroll information of then-current TransPerfect Employees that contained sensitive PII, including names, bank account numbers, routing numbers, and Social Security numbers.

17.     Current and past Employees were first notified of the Breach starting on January 20, 2017.  In a memorandum to current and past Employees, TransPerfect stated that it was currently investigating the matter.  TransPerfect also provided information regarding action that should be taken by affected Employees.

18.     By disclosing its Employees' PII to cybercriminals, TransPerfect put all of its Employees at risk.

19.     TransPerfect negligently failed to take the necessary precautions required to safeguard and protect Plaintiffs' and the other Class Members' PII from unauthorized disclosure.  Defendant's actions represent a flagrant disregard of Plaintiffs' and the other Class Members' rights, both as to privacy and property.

## II.     Personally Identifiable Information (PII)

20.     PII is of great value to hackers and cyber criminals, and the data compromised in the Data Breach can be used in a variety of unlawful manners.

21.     PII is information that can be used to distinguish, identify, or trace an individual's identity, such as their name, Social Security number, and biometric records.  This can be accomplished with the PII disclosed alone, or in combination with other personal or identifying information that is connected, or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.[4]

---

[4] *See* OFFICE OF MGMT. & BUDGET, OMB MEMORANDUM M-07-16 n.1.

22.     Given the nature of this Breach, it is foreseeable that hackers and cyber-criminals can and will use the compromised PII in a variety of different ways.

23.     Indeed, the cybercriminals who possess Employees' PII can easily obtain Employees' tax returns and/or file fraudulent tax returns in their names.

## III.     TransPerfect Was Aware Of The Risk Of Cyber-Attacks.

24.     Data security breaches -- and data security breach litigation -- dominated the headlines in 2015 and 2016 and continue to do so in 2017.[5]

25.     According to the Privacy Rights Clearinghouse Chronology of Data Breaches, 282 breaches were publicly reported from the fourth quarter of 2014 through the fourth quarter of 2015.[6]

26.     In fact, in 2016 Internet security researcher Brian Krebs warned of this precise scam on his website.  He warned that scammers specializing in tax refund fraud were trying to scam various companies by sending false e-mails, purportedly from the company's chief executive officer, to individuals in the human resources and accounting departments and asking for copies of Form W-2 information.[7]

27.     TransPerfect represented to Plaintiffs and Class Members that it understands the importance of protecting their PII and that it will do so in exchange for their employment.  On information and belief, TransPerfect emphasizes to Employees and prospective employees,

---

[5] *See e.g.*, *Seagate Phish Exposes All Employee W-2*, KREBS ON SECURITY (March 6, 2016), https://krebsonsecurity.com/2016/03/seagate-phish-exposes-all-employee-w-2s/; Seth Fiegerman, *Yahoo Says 500 Million Accounts Stolen*, CNN TECH (Sept. 23, 2016), http://money.cnn.com/2016/09/22/technology/yahoo-data-breach/.

[6] *See* Privacy Rights Clearinghouse Chronology of Breaches *available at* http://www.privacyrights.org.

[7] *Phishers Spoof CEO, Request W2 Forms*, KREBS ON SECURITY (Feb. 24, 2016), http://bit.ly/25oAc2c.

through its stated privacy policies and company security practices, that it maintains robust procedures designed to carefully protect the PII with which it was entrusted.

28.     TransPerfect's negligence in safeguarding the Employees' PII is also exacerbated by the fact that the company's own website recognizes the importance cyber security and potential threats from hackers.  For example, in connection with Defendant's service offerings to law firms, its website states:

> The recently reported cyberattacks on law firms . . . have put the issue of . . . cybersecurity in the spotlight.  But the truth is that such attacks are neither new nor infrequent.  Cyberattacks against law firms have been on the rise for a number of years— unsurprising given the wealth of highly sensitive and valuable client information that law firms possess.  It is a misconception that these attacks are randomly carried out by bored, tech-savvy teenagers looking for a buzz.  They are often conducted by sophisticated, well-funded hackers looking for specific information about pending deals or disputes. Earlier this year, the FBI's Cyber Division . . . warned that cybercriminals are actively targeting the legal sector to obtain nonpublic information about corporations in order to turn potentially significant profits on stock markets trades.[8]

29.     Further, Defendant also highlights the specific vulnerabilities associated with e-mail:

> E-mail is the most popular form of communication (along with texting) in the world.  But it is also one of the most vulnerable to hacking, which can take the form of viruses, malware, trojans, keyloggers, man-in-the-middle, and man-in-the-browser attacks (not to mention potential breaches of devices, networks, and servers themselves).  Even Yahoo's own Safety Center advises, "Never send your credit card number, Social Security number, bank account number, driver's license number or similar details in an e-mail, which is generally not secure.  Think of e-mail as a

---

[8] Tankut Eker, Dan Meyers, and Al-Karim Makhani, *Cybersecurity and Arbitration: Protecting Your Documents and Ensuring Confidentially*, TRANSPERFECT (Jan. 17, 2017), http://www.transperfect.com/blog/cybersecurity-and-arbitration.

paper postcard—people can see what's written on it if they try hard enough."[9]

30.     However, Defendant did exactly what it warned against: TransPerfect knowingly and deliberately provided, *inter alia*, Social Security numbers and detailed banking information through e-mail.

31.     Beyond using the data disclosed for nefarious purposes themselves, the cybercriminals who obtained the Employees' PII may also exploit the PII they obtained by selling the data in the so-called "dark markets."  Having obtained the Employees' names, addresses, banking information, and Social Security numbers, cybercriminals can use simply the data revealed or pair the data with other available information to commit a broad range of fraud in an Employee's name, including but not limited to:

- obtaining employment;

- obtaining a loan;

- applying for credit cards or spending money;

- filing fraudulent tax returns;

- obtaining medical care;

- stealing Social Security and other government benefits; and

- applying for a driver's license, birth certificate, or other public document.

32.     In addition, if an Employee's Social Security number is used to create a false identification for someone who commits a crime, the Employee may become entangled in the criminal justice system, impairing the Employee's ability to gain employment or obtain a loan.

---

[9] *Id.*

**IV.     TransPerfect's Current And Former Employees Have Suffered Concrete Injuries**

33.     Employees were obligated to provide TransPerfect with sensitive personal information, including their Social Security numbers.

34.     The cybercriminals will certainly use the Employees' PII, and the Employees are now, and will be for the rest of their lives, at a heightened risk of identity theft.  Plaintiffs bring this action because as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiffs have incurred and will continue to incur damages in the form of, *inter alia*, attempted identity theft, time and expenses mitigating harms (*e.g.*, the costs of engaging credit monitoring and protection services), increased risk of harm, diminished value of PII, and/or loss of privacy.  By this action, Plaintiffs seek to hold TransPerfect responsible for the harm caused by its negligence.

35.     In addition, as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiffs and the other Class Members have been deprived of the value of their PII, for which there is a well-established national and international market.  For example, stolen PII is sold on the cyber black market for $14 to $25 per record to individuals focused on committing fraud or needing or wanting a new identity.

36.     Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiffs and the other Class Members at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.[10]  Indeed, "[t]he level of risk is growing for anyone whose information is stolen in a data breach."[11]  Javelin Strategy & Research, a leading

---

[10] *Data Breach Victims More Likely To Suffer Identity Fraud*, INSURANCE INFORMATION INSTITUTE BLOG (February 23, 2012), http://www.iii.org/insuranceindustryblog/?p=267.

[11] Susan Ladika, *Study: Data Breaches Pose A Greater Risk*, CREDITCARDS.COM (July 23, 2014), http://www.creditcards.com/credit-card-news/data-breach-id-theft-risk-increase-study-1282.php.

provider of quantitative and qualitative research, notes that "[t]he theft of SSNs places consumers at a substantial risk of fraud."[12] Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. There is also a high probability that criminals who now possess Plaintiffs' and the other Class Members' PII have not yet used the information, but will do so at a later date or re-sell it.

37. As a result of the Data Breach, Plaintiffs and Class Members have already suffered damages. To mitigate those damages, Plaintiffs and Class Members incurred the additional injuries of securing extra protection for their tax returns (*e.g.* filing Form 14039's and/or requesting Identity Protection PINs), scheduling and attending in-person meetings at the request of the IRS to verify their identities and tax returns, and purchasing additional credit monitoring through LifeLock -- as LifeLock offers superior protections not available through ProtectMyID Elite -- to ensure the protection of their PII.

### V. TransPerfect's Response To The Data Breach Is Inadequate To Protect The Employees

38. TransPerfect has failed to provide adequate compensation to the Employees harmed by its negligence. To date, TransPerfect has offered Employees just two years of identity theft protection through the Experian ProtectMyID Elite service. Even if an Employee accepts the ProtectMyID Elite service, it will not provide Employees any compensation for the costs and burdens associated with fraudulent activity resulting from the Data Breach that took place prior to an Employee signing up for ProtectMyID Elite. TransPerfect has not offered Employees any assistance in dealing with the IRS or state tax agencies, and the call center has repeatedly failed to provide adequate responses to TransPerfect's Employees' questions and concerns. Nor has

---

[12] THE CONSUMER DATA INSECURITY REPORT: EXAMINING THE DATA BREACH- IDENTITY FRAUD PARADIGM IN FOUR MAJOR METROPOLITAN AREAS, (*available at* http://www.nclnet.org/datainsecurity_report).

TransPerfect offered to reimburse Employees for any costs incurred as a result of falsely filed tax returns, a likely consequence of the Breach.

39.     The offered ProtectMyID Elite service is inadequate to protect the Employees from the threats they face.  It does nothing to protect *against* identity theft.  Instead, it only provides various measures to detect identity theft once it has already been committed.  For example, ProtectMyID Elite monitors Employees' credit reports, performs internet scans, and provides address change alerts.  Notably, fraudulent activity, such as the filing of a false tax return, may not appear on a credit report.  Additionally, ProtectMyID *does not* provide real time monitoring of Employees' credit cards and bank account statements.  Rather, the included protections note that the ProtectMyID membership will only "help replac[e] credit, debit, and medical insurance cards."  Although ProtectMyID Elite offers up to $1 million of identity theft insurance, the coverage afforded is limited and often duplicative of (or inferior to) basic protections provided by banks and credit card companies.

40.     Many websites that rank identity protection services are critical of ProtectMyID. NextAdvisor ranks ProtectMyID at the bottom of comparable services, noting that it "lacks in protection; only includes Experian credit report monitoring; credit score and other credit reports cost extra."[13]  BestIDtheftCompanys.com ranks ProtectMyID at No. 13 with a score of just 4.9 out of 10 (and a "User Score" of just 1.3).[14]

---

[13] *Identity Theft Protection Reviews & Prices*, NEXT ADVISOR, http://bit.ly/1UCnsRP (last visited May 12, 2017).

[14] *2017 Best Identity Theft*, BEST COMPANY, http://bit.ly/1Rh1YGy (last visited May 12, 2017).

## CLASS ACTION ALLEGATIONS

41.     Pursuant to FED. R. CIV. P. 23, Plaintiffs bring this action against TransPerfect as a class action on behalf of themselves and all members of the following class of similarly situated persons (the "Class" or "Class Members"):

> "All persons whose PII was compromised as a result of the Data Breach."

42.     Plaintiffs reserve the right to amend the above definition(s), or to propose other or additional classes, in subsequent pleadings and/or motions for class certification.

43.     Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant have or had a controlling interest, or which Defendant otherwise controls or controlled; and any legal representative, predecessor, successor, or assignee of Defendant.

44.     This action satisfies the requirements for a class action under Rule 23.

45.     Plaintiffs believe that the proposed Class as described above consists of thousands of members and can be identified through TransPerfect's records, though the exact number and identities of the Class Members are currently unknown.  The Class is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.

46.     Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class Members.  Common questions include, but are not limited to, the following:

a.     Whether and to what extent TransPerfect had a duty to protect the Class Members' PII;

b.     Whether TransPerfect breached its duty to protect the Class Members' PII;

c.     Whether TransPerfect disclosed Class Members' PII;

d.   Whether TransPerfect timely, accurately, and adequately informed Class Members that their PII had been compromised;

e.   Whether TransPerfect's conduct was negligent; and

f.   Whether Plaintiffs and Class Members are entitled to damages.

47.   The claims asserted by Plaintiffs are typical of the claims of the Members of the Class they seek to represent because, among other things, Plaintiffs and Class Members sustained similar injuries as a result of TransPerfect's uniform wrongful conduct; TransPerfect owed the same duty to each Class Member; and Class Members' legal claims arise from the same conduct by TransPerfect.

48.   Plaintiffs will fairly and adequately protect the interests of the proposed Class. Plaintiffs' interests do not conflict with the Class Members' interests. Plaintiffs have retained class counsel experienced in class action litigation to prosecute this case on behalf of the Class.

49.   Prosecuting separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendant.

50.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class Members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class Members to prosecute their claims individually. Trial of Plaintiffs and Class Members' claims on a class basis, however, is manageable. Unless the Class is certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

51.     Certification of the Class, therefore, is appropriate under FED. R. CIV. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

52.     Certification of the Class is also appropriate under FED. R. CIV. P. 23(b)(2) because TransPerfect has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or equitable relief with respect to the Class as a whole.

53.     Certification of the Class is also appropriate under FED. R. CIV. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of establishing incompatible standards of conduct for TransPerfect.

54.     TransPerfect's wrongful actions, inaction, and omissions are generally applicable to the Class as a whole and, therefore, Plaintiffs also seek equitable remedies for the Class.

55.     TransPerfect's systemic policies and practices also make injunctive relief for the Class appropriate.

56.     Absent a class action, TransPerfect will retain the benefits of its wrongdoing despite its serious violations of the law and infliction of economic damages, injury, and harm on Plaintiffs and Class Members.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### (Negligence)

57.     Plaintiffs re-allege and incorporate by reference all preceding factual allegations as though fully set forth herein.

58.     Plaintiffs brings this claim on behalf of themselves and the Class.

59.     The Employees are or were employed by TransPerfect, were each on TransPerfect's payroll, and were each issued a Form W-2 from TransPerfect.  As a condition of their employment, Employees were obligated to provide TransPerfect with certain PII including their names, banking information, and Social Security numbers.

60.     TransPerfect had full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and Class Members could and would suffer if the PII were wrongfully disclosed. TransPerfect had a duty to Plaintiffs and each Class Member to exercise reasonable care in holding, safeguarding, and protecting that information.  Plaintiffs and the Class Members were the foreseeable victims of any inadequate safety and security practices.  Plaintiffs and the other Class Members had no ability to protect their data that was in TransPerfect's possession.

61.     TransPerfect had a duty to Plaintiffs and Class Members to safeguard and protect their PII.  TransPerfect's duty to the Plaintiffs and other Class Members included, *inter alia*, establishing processes and procedures to protect the PII from wrongful disclosure and training employees who had access to the PII as to those processes and procedures.

62.     Defendant assumed a duty of care to use reasonable means to secure and safeguard this PII, to prevent its disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems.

63.     Defendant had a duty to use ordinary care in activities from which harm might be reasonably anticipated in connection with Employees' PII data.

64.     Defendant breached its duty of care by failing to secure and safeguard the PII of Plaintiffs and Class Members.  Defendant negligently stored and/or maintained its systems.

65.     Further, Defendant, by and through its above negligent actions and/or inaction, further breached its duties to Plaintiffs and Class Members by failing to design, adopt, implement,

control, manage, monitor, update, and audit its processes, controls, policies, procedures, and protocols for complying with the applicable laws and safeguarding and protecting Plaintiffs' and Class Members' PII within its possession, custody, and control.

66. TransPerfect admitted that Plaintiffs' and the other Class Members' PII was wrongfully disclosed as a result of the Data Breach.

67. Plaintiffs and the other Class Members have suffered harm as a result of Defendant's negligence. These victims' loss of control over the compromised PII subjects each of them to a greatly enhanced risk of identity theft, fraud, and myriad other types of fraud and theft stemming from use of the compromised information.

68. It was reasonably foreseeable -- in that Defendant knew or should have known -- that its failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' PII would result in its release and disclosure to unauthorized third parties who, in turn, wrongfully used such PII or disseminated it to other fraudsters for their wrongful use and for no lawful purpose.

69. But for Defendant's negligent and wrongful breach of its responsibilities and duties owed to Plaintiffs and Class Members, their PII would not have been compromised.

70. As a direct and proximate result of Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiffs' and Class Members' PII, Plaintiffs and the Class Members have incurred (and will continue to incur) the above-referenced economic damages, and other actual injury and harm -- for which they are entitled to compensation. Defendant's wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence and/or negligent misrepresentation.

71. Plaintiffs and Class Members are entitled to injunctive relief as well as actual and punitive damages.

## SECOND CAUSE OF ACTION
### (Breach of Express Contract)

72. Plaintiffs re-allege and incorporate by reference all preceding factual allegations as though fully set forth herein.

73. Plaintiffs brings this claim on behalf of themselves and the Class.

74. Plaintiffs and Class Members had written employment agreements with TransPerfect. The employment agreements involved a mutual exchange of consideration whereby TransPerfect entrusted Plaintiffs and Class Members with particular job duties and responsibilities in furtherance of TransPerfect's services, in exchange for the promise of employment, with salary, benefits, and secure PII.

75. TransPerfect's failure to protect Plaintiffs' and Class Members' PII constitutes a material breach of the terms of the agreement by TransPerfect.

76. As a direct and proximate result of TransPerfect's breach of contract with Plaintiffs and Class Members, Plaintiffs and Class Members have been irreparably harmed.

77. Accordingly, Plaintiffs, on behalf of themselves and the Class Members, respectfully request this Court award all relevant damages for TransPerfect's breach of express contract.

## THIRD CAUSE OF ACTION
### (Breach of Implied Contract)

78. Plaintiffs re-allege and incorporate by reference all preceding factual allegations as though fully set forth herein.

79. Plaintiffs brings this claim on behalf of themselves and the Class.

80.     TransPerfect required Plaintiffs and Class members to furnish their PII, which included, *inter alia*, names, addresses, Social Security numbers, and banking information, as a condition precedent to their employment. TransPerfect required the sensitive information to verify their identities, provide agreed-upon compensation and benefits, and for tax purposes, amongst other things.

81.     Understanding the sensitive nature of PII, TransPerfect implicitly promised Plaintiffs and the Class Members that it would take adequate measures to protect their PII.

82.     Moreover, as a part of the implied contract, TransPerfect implicitly promised to retain its Employees' PII only for the term of their employment, and to either destroy it after employment came to an end, or to take appropriate steps to ensure that it was never lost or stolen.

83.     Indeed, a material term of this contract is a covenant by TransPerfect that it will take reasonable efforts to safeguard its Employees' confidential PII.

84.     TransPerfect's Employees, including Plaintiffs and the Class Members, reasonably relied upon this covenant and would not have disclosed their PII without assurances that it would be properly safeguarded.

85.     Moreover, the covenant to adequately safeguard Plaintiffs' and the Class Members' PII is an implied material term of Plaintiffs' and Class Members' employment -- to the extent that it is not an express material term.

86.     Plaintiffs and the Class Members fulfilled their obligations under the contract by providing their PII to TransPerfect, and by faithfully and steadfastly upholding their employment obligations.

87. TransPerfect, however, failed to protect and/or destroy Plaintiffs' and Class Members' PII. TransPerfect's material breach of its obligations under the contract between the parties directly and proximately caused Plaintiffs and the Class Members to suffer injuries.

88. As the direct and proximate result of Defendant's breach of the contract between TransPerfect and Plaintiffs and the Class Members, Plaintiffs and the Class Members sustained actual losses and damages as described above.

89. Accordingly, Plaintiffs, on behalf of themselves and the Class Members, respectfully request this Court award all relevant damages for TransPerfect's breach of implied contract.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

90. Plaintiffs re-allege and incorporate by reference all preceding factual allegations as though fully set forth herein.

91. Plaintiffs brings this claim on behalf of themselves and the Class.

92. TransPerfect, by way of its affirmative actions and omissions, knowingly and deliberately enriched itself by saving the costs it reasonably and contractually should have expended on data security measures to secure Plaintiffs' and Class Members' PII.

93. Instead of providing for a reasonable level of security that would have prevented the disclosures, consisting of firewalls, data security trainings, and PII retention and destruction policies and procedures -- as is common practice among companies entrusted with such sensitive personal information -- TransPerfect instead consciously and opportunistically calculated to increase its own profits at the expense of Plaintiffs and Class Members.

94.     Nevertheless, TransPerfect continued to obtain the benefits conferred on it by Plaintiffs' and Class Members' employment, mainly from the labor contracted to in the employment agreements between the parties.

95.     Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result.  As a result of TransPerfect's decision to profit rather than provide requisite security, and TransPerfect's resultant disclosures of its Employees' PII, Plaintiffs and Class Members suffered and continue to suffer considerable injuries in the forms of attempted identity theft, time and expenses mitigating harms, diminished value of PII, loss of privacy, and increased risk of harm.

96.     Thus, TransPerfect engaged in an opportunistic material breach of contract, wherein it profited from interference with Plaintiffs' and Class Members' legally protected interests.  As such, it would be inequitable, unconscionable, and unlawful to permit TransPerfect to retain the benefits it derived as a consequence of its breach.

97.     Accordingly, Plaintiffs, on behalf of themselves and the Class Members, respectfully request this Court award relief in the form of restitution and/or compensatory damages.

## FIFTH CAUSE OF ACTION
### (N.Y. LABOR LAW § 203-d)

98.     Plaintiffs re-allege and incorporate by reference all preceding factual allegations as though fully set forth herein.

99.     Plaintiffs brings this claim on behalf of themselves and the Class.

100.     Pursuant to New York law, "[a]n employer shall not unless otherwise required by law: . . . (c)  Place a social security number in files with unrestricted access; or (d)  Communicate

an employee's personal identifying information to the general public." N.Y. LABOR LAW § 203-d(1).

101.    "[P]ersonal identifying information" is defined as including an individual's "social security number, home address or telephone number, personal electronic mail address, Internet identification name or password, parent's surname prior to marriage, or drivers' license number." N.Y. LABOR LAW § 203-d(1)(d).

102.    The statute further mandates that "[i]t shall be presumptive evidence that a violation of this section was knowing if the employer has not put in place any policies or procedures to safeguard against such violation, including procedures to notify relevant employees of these provisions." N.Y. LABOR LAW § 203-d(3).

103.    TransPerfect's acts and omissions were unlawful and in violation of N.Y. LABOR LAW § 203-d because TransPerfect sent files containing thousands of Employee Social Security numbers and various other forms of PII to thieves via e-mail. The files were unencrypted and no security measures were taken to prevent the e-mails or information therein from being endlessly circulated and accessed.

104.    Moreover, TransPerfect had not put into place any policies or procedures -- despite its covenants stating otherwise -- to safeguard against such violations, as is made evident by TransPerfect's susceptibility to a phishing scam (of which it should have been aware by way of even minimal data security training), the fact that the files containing its Employees' PII were e-mailed in an unencrypted format, and -- rather than destroy its former Employees' PII as is a basic data security practice -- TransPerfect continued generating and mailing Form W-2's for individuals who ended their employment years prior.

105. Accordingly, Plaintiffs, on behalf of themselves and the Class Members, respectfully request this Court award statutory damages, compensatory damages, and injunctive relief for TransPerfect's violations of N.Y. LABOR LAW § 203-d.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully request that the Court grant relief against Defendant as follows:

a.   For an Order certifying the proposed Class pursuant to FED. R. CIV. P. 23(b)(1), (2) and/or (3), requiring notice thereto to be paid by Defendant, and appointing Plaintiffs and their counsel to represent the Class;

b.   For appropriate injunctive relief and/or declaratory relief, including an Order requiring Defendant to immediately secure and fully encrypt all confidential information, to properly secure computers containing confidential information, to cease negligently storing, handling, and securing its Employees' confidential information, and to provide identity theft monitoring for an additional five years;

c.   Adjudging and decreeing that Defendant has engaged in the conduct alleged herein;

d.   For compensatory, statutory, and general damages according to proof on certain causes of action;

e.   For reimbursement, restitution, and disgorgement on certain causes of action;

f.   For both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;

g.   For costs of the proceedings herein;

h.   For an Order awarding Plaintiffs and the Class reasonable attorney's fees and expenses for the costs of this suit; and

i.      For any and all such other and further relief that this Court may deem just and

proper, including but not limited to punitive or exemplary damages.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiffs hereby demand trial by jury of all claims and causes of action in this lawsuit to which they are so entitled.

Dated: May 19, 2017
White Plains, New York

**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**

By: ___*/s/ Jeremiah Frei-Pearson*_____
Jeremiah Frei-Pearson
Todd S. Garber
John D. Sardesai-Grant
Chantal Khalil
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
jfrei-pearson@fbfglaw.com
tgarber@fbfglaw.com
jsardesaigrant@fbfglaw.com
ckhalil@fbfglaw.com

*Attorneys for Plaintiffs and the Putative Class*