**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JESSE SACKIN, PETER HARRIS,
STEPHEN LUSTIGSON, NICHOLAS
MIUCCIO, and SARAH HENDERSON,
individually and on behalf of all others
similarly situated,

                  Plaintiffs,            Case No. 17-cv-1469-LGS

       v.

TRANSPERFECT GLOBAL, INC.,

                 Defendant.

## <u>DECLARATION OF JEREMIAH FREI-PEARSON</u>

      I, Jeremiah Frei-Pearson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746

that the foregoing is true and correct:

      1.      I am a partner in the law firm of Finkelstein, Blankinship, Frei-Pearson & Garber,

LLP ("FBFG") and counsel for Plaintiffs Jesse Sackin, Peter Harris, Stephen Lustigson, Nicholas

Miuccio, and Sarah Henderson in the above-captioned action.  I respectfully submit this

Declaration in Support of Plaintiffs' Uncontested Motion for Final Approval of the Class Action

Settlement.

      2.      Attached as Exhibit 1 is a Proposed Final Judgment and Order of Dismissal for

the Court to consider should it finally approve the Settlement.

      3.      Prior to the Settlement, the Parties engaged in motion practice, fully briefing

Defendant's motion to dismiss.  They also engaged in written discovery.  Plaintiffs served

Defendant with their First Set of Requests for Production and Interrogatories on June 1, 2017,

and served Defendant with an additional Interrogatory on October 6, 2017.  Defendant proffered

objections and answers to Plaintiffs' discovery requests and produced responsive documents.

Defendant served Plaintiffs with its First Sets of Requests for Production and Interrogatories on August 1, 2017.  Plaintiffs provided objections and answers to Defendant's discovery requests and have completed their document production.  Plaintiffs have reviewed all documents produced by Defendant and have also interviewed key witnesses and obtained witness testimony.

4.      When settlement discussions began, the Parties selected David Geronemus of JAMS, a respected mediator, to assist the Parties with mediation.  The Parties had a teleconference with Mr. Geronemus and provided him with mediation statements prior to mediation.  On November 7, 2017, the Parties participated in a full-day, arm's-length mediation negotiation with Mr. Geronemus, where the Parties reached an agreement in principle.  The Parties then engaged in further settlement negotiations until they all agreed to the Settlement on December 15, 2017.[1]

5.      The Settlement provides the following relief to the Class in exchange for the dismissal of the Action and release of Action-related claims against Defendant:

a.      Defendant will offer all Class Members the option to enroll in Experian's CreditPlus 3-Bureau service for a three-year period.  Experian's Credit Plus 3B includes, *inter alia*: (i) three-bureau credit monitoring alerts; (ii) dark web surveillance alerts; (iii) daily credit reports; (iv) up to $1 million in identity theft insurance; and (v) fraud resolution support.

b.      Class Members who have already enrolled in the Original Experian Plan will remain enrolled for the complete two-year term, and must timely submit an Election Form in order to receive enrollment instructions for the additional three-year protection service.

c.      Class Members who have not yet enrolled in the Original Experian Plan may do so through February 10, 2019 and receive two years of coverage.

---

[1] The terms and phrases in this declaration shall have the same meaning as set forth in the Settlement Agreement.

d.      Defendant will also offer each Class Member up to an aggregate of $4,000 in reimbursements for documented economic costs related to the Data Breach that have not been reimbursed by Experian or other third parties.

e.      Based on my experience handling similar data breach actions, I believe that that few, if any, Class Members will suffer economic losses that are not covered by Experian's $1 million insurance policy that will exceed the $4,000.00 reimbursement cap.

f.      In terms of non-monetary relief, Defendant agrees to implement and maintain a variety of specific data security practices.

6.      It is not possible to precisely determine the recovery for each Class Member because each Class Member's recovery under the Settlement depends on whether and to what extent such Class Member accepts the offer of identity theft protection services and/or incurs economic harm resulting from the Data Breach that was submitted to and rejected under the Experian plan.

7.      I estimate the identity theft protection services of the Settlement consideration to have a value of approximately $719.64 per Class Member, or approximately $3.515 million for the entire Class based on Defendant's estimated class size of 4,884.  My estimation is based on the retail cost of the most equivalent level of credit monitoring protection offered by Experian, the IdentityWorks Premium plan, which costs $19.99 per month.

8.      I estimate the reimbursement component of the Settlement consideration to have a value of approximately $19.536 million to benefit the Class based on Defendant's estimated class size.

9.      I believe that the total consideration under the Settlement will provide the Class Members with nearly all – if not all – of the relief to which they would be entitled if they prevailed on their claims at trial.

10.      The Settlement fairly allocates the Settlement consideration among the Class Members.  All Class Members are offered the same identity theft protection services and the opportunity to seek reimbursement of documented economic costs related to the Data Breach of up to $4,000.00.  Moreover, the non-monetary relief provided by the Settlement will offer additional protection to the extent the Class Members' PII remains in Defendant's possession.

11.      Plaintiffs share the same interests in securing relief for the claims in this case as every other member of the proposed Class, and there is no evidence of any conflict of interest. Plaintiffs have demonstrated their continued willingness to vigorously prosecute this case and have regularly consulted with their counsel, aided in the prosecution of the litigation, reviewed documents and the proposed settlement, provided documents in the course of this litigation, indicated their willingness to sit for depositions in this litigation, and indicated their desire to continue protecting the interests of the Class through settlement or continued litigation.

12.      My colleagues and I will likewise continue to adequately protect the interest of the proposed Class.  My colleagues and I have regularly engaged in major complex litigation and have extensive experience in consumer privacy class action lawsuits, including cases of first impression related to data breaches and consumer privacy, and have been appointed class counsel in these efforts.  Attached as Exhibit 2 is a copy of FBFG's Firm Resume.

13.      My FBFG colleagues and I conducted extensive factual and legal research concerning the claims and potential defenses in this matter, and successfully alleged complex and innovative arguments.  We interviewed numerous potential class members, including the

Plaintiffs.  We conducted extensive research into the dangers of identity theft and available credit monitoring and identity theft protection plans.  We collected, reviewed, and produced documents from Plaintiffs in response to informal discovery requests.  We reviewed hundreds of pages of documents produced by Defendant in response to numerous requests for production of documents.  We successfully briefed and argued against Defendant's motion to dismiss.  We successfully negotiated the present Settlement Agreement on behalf of the Class.

14.     My FBFG colleagues and I have pursued this litigation vigorously on behalf of the proposed Class and remain committed to advancing and protecting the common interests of the proposed Class.

15.     Based on my experience and investigation into the facts of this case, I believe that the Settlement Agreement is fair, reasonable, and adequate to the Class and should be approved by the Court.  Each of the named Plaintiffs has confirmed their approval of the terms of the Settlement to myself or my associates.

16.     I further conclude that balancing the strength of the Class's claims against the legal and factual obstacles remaining, the relief afforded by the proposed Settlement – which provides almost all of the relief the Class would be entitled to if they prevailed at trial – was in the best interest of the Class.

17.     Moreover, to my knowledge, the terms of this Settlement are more favorable than the terms of any similar employee data breach settlements.

18.     Angeion, the appointed Claims Administrator, has represented to defense counsel that its estimated fees and costs are $32,993.00 plus an additional $1,493.00 in postage. Pursuant to Sections 5.3 and 7.5 of the Settlement Agreement, Defendant shall be solely responsible for

paying Angeion for its settlement administration services and the costs of notice and settlement administration.

**Updated Lodestar And Multiplier**

19.    In Plaintiffs' Motion for Award of Attorneys' Fees, Costs, Expenses, and Service Awards, I anticipated that FBFG would spend at least an additional fifty hours preparing and filing the motion for final approval, responding to Class Member inquiries, and attending the fairness hearing. *See* ECF No. 57 at 20. However, due to a notice administration oversight, FBFG attorneys have had to devote more time than anticipated to resolving this action. Since filing Plaintiffs' motion for an award of attorneys' fees, FBFG attorneys have spent the following number of hours preparing the final approval papers and addressing claims administration issues, including the need to extend opt-out and objection deadlines and to disseminate supplemental notices, and communicating with Class Members:[2]

| Name | Position | Hours | Rate Per Hour | Lodestar |
|---|---|---|---|---|
| Jeremiah Frei-Pearson | Partner | 27.80 | $800 | $22,240 |
| Antonino B. Roman | Associate | 47.00 | $575 | $27,025 |
| Chantal Khalil | Associate | 27.60 | $350 | $9,660 |
| **Total** | | **102.40** | | **$58,925** |

20.    Consequently, FBFG has devoted a total of 985.5 hours to prosecuting and resolving this action (from 883.1 hours as of June 11, 2018). This translates to a total lodestar of

---

[2] On July 24, 2018, at the Parties' request, the Court approved the dissemination of Supplemental Email and Postcard Notices, and extended the deadlines to opt out and object from June 25, 2018 to September 17, 2018. *See* ECF No. 61. The Supplemental Notices were necessary to "avoid confusion concerning the amended Settlement deadlines and to increase visibility of the Settlement's benefits" after the Settlement Administrator had failed to mail Postcard Notices to the 1,808 Class Members who did not open the initial Email Notice (as required by Section 8.5 of the Settlement). *See* ECF No. 61. To cure the omission, the Parties agreed to extend the deadline to opt out or object to the Settlement, which had already expired when the omission was discovered, and the Settlement Administrator agreed to re-notice the 1,808 Class Members at its expense. Additionally, the Parties agreed provide an additional round of notice to the remaining Class Members, and agreed to share the cost of doing so. Class Counsel anticipates that the dissemination of Supplemental Notices will result in more claims, as it has to date.

$505,555.  In turn, the higher lodestar reduces the requested multiplier to 1.41 (from 1.6 as of June 11, 2018).   I anticipate that FBFG will devote an additional 10-15 hours to preparing for and attending the Fairness hearing, and addressing Class Members' questions or concerns.  The reduced lodestar multiplier and the remaining work to be done in the case confirm the reasonableness of the requested fee award, which is merely 3.1% of the Settlement's estimated value.

### Updated Expenses

21.     Since filing Plaintiffs' motion for an award of attorneys' fees and expenses, FBFG has also incurred additional expenses in the amount of $3,234.23.  These additional expenses arise out of the Parties' agreement to share the cost of disseminating Supplemental Notice, as well as Westlaw research expenses incurred in connection with the final approval motion.  Thus, Class Counsel seeks reimbursement in the total amount of $17,748.95.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 6, 2018 in White Plains, New York.

FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP


By:     */s/ Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson